**Candace Sue THIERRY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–07–00712–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 12, 2009.

Discretionary Review Refused
July 1, 2009.

---

Brian M. Middleton, The Middleton Law Firm, PLLC, Houston, TX, for Appellant.

Kristen Moore, John J. Harrity III, Assistant District Attorneys, John F. Healy, Jr., Richmond, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

TIM TAFT, Justice.

A jury convicted appellant, Candace Sue Thierry, of fraudulent use or possession of identifying information and assessed punishment at 15 months in state jail. *See* TEX. PENAL CODE ANN. § 32.51 (Vernon Supp.2008). We determine (1) whether appellant preserved any error regarding certain prosecutorial comments during opening statement and closing argument and any error regarding the admission of certain testimony from the complainant, (2) whether the trial court abused its discretion in admitting a videotape, and (3) whether the trial court erred in denying appellant's motion for directed verdict challenging the sufficiency of the evidence to establish venue. We affirm.

## Facts

Sue Speck, the complainant, was referred to Dr. Campos at Oncology Consultants for chemotherapy and followup treatments, following surgery for breast cancer in 1994. She visited his offices from 1994 through 2005, initially going every six weeks, then every few months, and finally once a year. At each appointment, Speck was required to disclose identification information, including address, social security number, driver's license number, and date of birth on forms for her patient record. Appellant was employed at Oncology Consultants during 2005 as a medical assistant and had access to patient information.

In September of 2005, Speck began receiving credit cards in the mail, in variants of her name, from companies with whom she did not have credit accounts. One was a Mervyn's card in the name of Candace S. Speck. Speck, who was the mayor of Hedwig Village, contacted the Hedwig Village Police Department.

As part of his investigation of the matter, Hedwig Village Police Detective Steven Packard called each of the stores from which Speck received credit cards. Paul Parent, the loss-prevention manager at Mervyn's, found receipts and videotaped footage of the transactions on the store's video security system, which had recorded someone using identifying information to open a credit account that matched the account information Packard had given to the store.

Packard put together a photo array, which included appellant's picture, and showed it to Sybil Moji, the cashier who handled the transaction, who immediately identified appellant as the person who had opened a credit account and had given personal information in order to do so. Packard also presented the photographic array to Parent after he had reviewed the videotape, and Parent identified appellant, although he was not "100 percent" certain of the identification.

Packard, with the assistance of another Hedwig Village police officer, a Texas Ranger whom he had contacted for assistance in the investigation of the case, and uniformed Houston Police Department of-

ficers, arrested appellant at her home after obtaining a warrant. After determining that appellant was at home, the police knocked on her door. It was ultimately answered by a man who stated that appellant had left the home and he did not know where she had gone. The police searched the home and found appellant hiding in a closet, on the floor, under a pile of clothes.

At trial, Speck identified appellant in the courtroom as Candace Sue Thierry, whom she knew as an employee of Dr. Campos. Speck stated that she had never given appellant authorization to use her information or to apply for a Mervyn's card for her. Moji also identified appellant in court as the person who had opened a credit account at Mervyn's and she detailed the transaction that she had handled with appellant. Parent testified to the workings of the store's specialized multiplex recording system. He explained how he had linked the particular transactions to particular recordings, described how he had transferred the pertinent recordings to a videotape which was given to Detective Packard, and identified Moji and appellant as being on the videotape, which was admitted into evidence.

### Opening Statement

In her first and second issues, appellant argues that the trial court erred in overruling her objections to several comments by the State during its opening statement.

### A. Improper argument

■ The first comment of which appellant complains occurred in the following fashion.

State: This is an identity theft. I'm sure many of you, when you have gone to a bank or when you call Time Warner, almost anybody you call, anybody you have an account with, you know, that the first question you always get asked are [sic], what is your name, then they want to know your social security number, and what your driver's license number is. And most of you, I'm sure, have developed already a resonance [sic] or an unwillingness to want to give out too much of that information. . . . Well, that was the case with a lady by the name of Sue Speck. . . . [S]he was diagnosed with breast cancer. And so she had to go to an oncologist . . . to get treatment and chemo. . . . And each year when she would show up, the same people, even though some of them knew her, would ask her in the same crowded room: What is your social security number, what is your driver's license number. And this is what the evidence is going to show you.

By the way, you don't have to take my word for anything. Everything that I'm about to say here is going to be proven to you by somebody taking that witness stand and taking the oath. *And I don't think you'll see that I have any reason to lie.* Anyhow, they will—she will tell you that each . . .

Defense Counsel: Objection, Your Honor, at that last comment; ask for an instruction to the jury to disregard about whether or not he had a reason to lie. It's not the issue before this Court, and improper opening.

Court: Well, there's a certain flexibility in opening statement. And the prosecution is making his statement of what he believes he'll be able to prove to you. And you must take that statement in that context, and not as an assertion of facts or his individual credibility or anything of that nature. Go right ahead.

(Emphasis added). No further objections or requests on this matter were made.

On appeal, appellant asserts that the contested statement were an attempt to inflame the minds of the jurors and bolster the prosecutor's personal credibility and were improper because they were not statements of what the State expected to prove at trial.

The record reflects that the trial court never ruled on appellant's objection and appellant did not press the court for a ruling nor object to the lack of a ruling. The court even gave the jury an instruction that addressed appellant's stated concern, albeit not an instruction to disregard. However, appellant did not object to the instruction given, nor did she make any further request or complaint to the court on this matter.

■ In order to preserve error for appeal, a complaining party must not only object, but must obtain an adverse ruling on the record or object to the trial court's refusal to rule on the objection. TEX. R.APP. P. 33.1(a); *accord Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996) (holding that "[b]efore a defendant will be permitted to complain on appeal about an erroneous jury argument ... he will have to show he objected and pursued his objection to an adverse ruling"); *DeRusse v.*

*State*, 579 S.W.2d 224, 235 (Tex.Crim.App. 1979) (holding that "[a]n objection to argument must be pressed to the point of procuring a ruling or the objection is waived"). Appellant did not object to the trial court's response, which failed to rule on her objection, nor did she object to the trial court's failure to rule, so she may not complain now on appeal.[1] TEX.R.APP. P. 33.1(a); *Cockrell*, 933 S.W.2d at 89; *DeRusse*, 579 S.W.2d at 235. We accordingly overrule appellant's first issue.

## B. Violation of motion in limine

■ Appellant's second issue complains generally of the State's "continually" commenting on "identification evidence which was subject to Appellant's Motion in Limine, Motion to Suppress In–Court Identification of the Defendant, and Motion to Suppress Photographic Identification," in alleged violation of the trial court's ruling on appellant's motion in limine. Appellant does not identify the particular comments or rulings complained of on appeal, but rather simply refers to certain pages of the record. Appellant also does not cite to the portion of the record containing a ruling on her motion in limine.[2] On the pages of the record that are cited by ap-

1. Moreover, we note that appellant effectively received all the relief that she sought because the trial court gave the jury an instruction not to regard the prosecutor's comment as an assertion of facts or of the prosecutor's personal credibility.

2. Appellant filed a written motion in limine dealing with the admission of previous convictions and extraneous offenses. The order in that motion is unsigned. There was a hearing just before trial began during which appellant asked that the State not mention appellant's prior deferred adjudication unless there was a hearing, nor mention the Justice Information Management System ("JIMS") database, which was used by the police in their initial investigation, as that might alert the jury to appellant's criminal record. The State agreed to these requests. Appellant

then asked the judge for a hearing outside the presence of the jury "before we get into any identification," citing his pending motions to suppress identification. The State responded that it thought that appellant was entitled to such a hearing and the judge stated, "all right." The State added that it would try not to mention "it" in opening statement. The judge then clarified that the "JIMS part" was probably not prejudicial, but said that he did not want "any mention past that," such as subclassifications. The judge stated, "Then I'll grant the objection concerning JIMS with the qualification of what we just talked about as being acceptable," and he concluded that "on any identification, we'll have a hearing outside [the presence of] the jury. I will rely upon you all to bring that up."

pellant appear (1) an unruled-on objection that "this is an issue that was addressed in a motion in limine" during a description of Steve Packard's expected testimony regarding the creation of a photo-lineup, (2) several unobjected-to references to the identification of appellant by witnesses, and (3) a protest—during a remark by the State during opening statement that witness Sybil Moji would identify appellant as the one who opened the account—that the State was "again[ ] addressing an issue[ ] that was raised in the motion in limine," followed immediately by a motion for mistrial, and an argument outside of the presence of the jury. The trial judge ultimately stated that he was "going to overrule [it][3] for the time being."

■ It is well settled that "mere reference to pages in the record does not sufficiently identify testimony, the objections thereto, and the court's rulings thereon to constitute a ground of error." *Thomas v. State*, 701 S.W.2d 653, 662 (Tex.Crim.App. 1985). Nor is an appellate court required to search through the record for support of an appellant's assertion of error. *See Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd). Nevertheless, we have reviewed the record and note that, while appellant complains that the prosecutor "continuously" made reference to "identification" during opening statement, appellant did not complain on every occasion during opening statement when the identification of appellant by witnesses was referred to by the State.

Appellant has therefore forfeited review of this issue. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex.Crim.App.2003) (noting that appellant must object on every occasion that inadmissible evidence is offered).

We also observe that appellant does not complain on appeal that any identification evidence subject to any motion in limine order was improperly admitted by the trial court. Rather, her complaint is limited to the State's alleged violation of the trial court's motion in limine order by making references to "identification evidence" during opening statement. Appellant's objection below, upon which she relies, likewise did not complain of the admission of any improper evidence but only of the State's alleged violation of the trial court's order on the motion in limine by referencing "identification" evidence.

■ A motion in limine is "a method of raising objection to an area of inquiry prior to the matter reaching the ears of the jury through a posed question, jury argument, or other means.... However, it is also, by its nature, subject to reconsideration by the court throughout the course of the trial. This is because it may not be enforced to exclude properly admissible evidence." *Norman v. State*, 523 S.W.2d 669, 671 (Tex.Crim.App.1975). A motion in limine is not a ruling that excludes evidence; rather, it merely requires the parties to approach the trial court for a definitive ruling before attempting to put on evidence within the scope of the motion

**3.** Appellant does not complain on appeal of the trial court's denial of her motion for mistrial—rather, she specifically complains only of the "deni[al] of [her] objection." Appellant does not reference the applicable standard of review for a claim that a trial court erred in not granting a mistrial, nor does she discuss any of the factors to be considered in the grant or denial of a request for a mistrial. Accordingly, if appellant meant to complain of the trial court's action in denying her request for mistrial, such complaint has been forfeited. *See* Tex R.App. P. 38.1(i); *Jones v. State*, 119 S.W.3d 766, 784 (Tex.Crim.App. 2003) (holding that where appellant complained of trial court's failure to grant mistrial but did not present any authority or argument in support of claim, issue was inadequately briefed).

in limine order. *Bobo v. State*, 757 S.W.2d 58, 61 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd). "It is axiomatic that motions in limine do not preserve error." *Harnett v. State*, 38 S.W.3d 650, 655 (Tex.App.-Austin 2000, pet. ref'd). A ruling on a motion in limine is not a ruling on the merits but one which regulates the administration of a trial. *Id.* Accordingly, the violation of a ruling on a motion in limine may entitle a party to relief, but any remedy for such violation lies with the trial court, who may hold the litigant or attorney in contempt or use other remedies or sanctions. *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex.Crim. App.1972). Because appellant does not complain on appeal of the actual admission of the identification evidence in question at trial, she has preserved nothing for our review. *See Harnett*, 38 S.W.3d at 655 (holding that where appellant objected to violation of order granting motion in limine, not to admission of evidence itself, no error preserved). We overrule appellant's second issue.

## Admission of Evidence

Appellant's third and fourth issues complain of the trial court's admission of certain evidence at trial over appellant's objections.

### A. Evidence of cancer treatment

■ In her third issue, appellant argues that the trial court erred in admitting evidence of the complainant's medical history and contends that the State should not have been allowed to "harp on the circumstances of [the complainant's] illness and the frequency of her visits due to the inflammatory nature of the testimony." Appellant avers that the State went into "excessive detail" in establishing that appellant had the opportunity to commit the crime because the complainant was visiting appellant's employer for treatment and that such testimony was in violation of Rules 402 and 403 of the Texas Rules of Evidence.

Appellant does not set out the particular testimony that she alleges is error but rather simply refers to several pages of the record. As previously noted, mere reference to pages of the record does not sufficiently identify a complaint for review. *Thomas*, 701 S.W.2d at 662. Our examination of the cited portion of the record, however, reveals (1) objections to a question regarding the complainant's initial cancer treatment as being irrelevant and unfairly prejudicial, which objections were overruled, followed by (2) testimony about the complainant's initial treatment and the subsequent course and nature of her cancer treatment, during which only one objection was made—that an answer was "non-responsive"—and finally (3) after the State asked the complainant on what schedule she had to go back to the oncologist, a renewal of the objection "that we made before the bench"[4] and a request for a "continuing objection on those [*sic*] line of questions." The trial court granted the continuing objection, which was followed by testimony which established that the complainant went to Dr. Campos's office every year, after having a mammogram, for a physical exam and bloodwork, and

---

4. At the beginning of the complainant's testimony, the State asked her about her initial treatment for cancer. Appellant objected and asked to approach the bench. Outside of the hearing of the jury, appellant's counsel stated, "I know the reason, what he's going in, if he's going to excessive detail, I object as it's prejudicial going into—I mean, if it's to show why she was at that clinic, that's fine. But to go into what happened five, six years ago, I think is not only not relevant, but also unfairly prejudicial." The State responded that "she's got to talk about what happened, and why she goes back. It's the first question about it, Judge. I only asked one question." The judge overruled the objection.

that she had gone to the office in 2004 and in spring or early summer of 2005.

■■■■ In order to preserve error regarding the admission of evidence, an appellant must make a timely objection to each instance in which the objectionable testimony is elicited. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991). Any error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Id.* Thus, where there is an objection to the first question on a particular subject, but no objection to subsequent questions on the same subject, no error is preserved regarding the admission of testimony on that subject. *Id.* at 859–60; *see also Salazar v. State,* 131 S.W.3d 210, 214–15 (Tex.App.-Fort Worth 2004, pet. ref'd). A defendant may preserve error as to the admission of all testimony on a certain subject by lodging a timely running objection to it, but when substantially similar testimony has already been admitted without objection, a subsequent running objection is untimely and does not preserve error. *See Ethington,* 819 S.W.2d at 859–60 (holding that error not preserved when initial objection was overruled and appellant did not object to subsequent detailed testimony on same subject, stating that "initial objection should have been followed by further objections or a request for a 'running' objection"); *Cole v. State,* 987 S.W.2d 893, 895 (Tex.App.-Fort Worth 1998, pet. ref'd) (determining that appellant waived error in admission of evidence of extraneous incidents because appellant did not object to testimony about incidents; holding that, even though appellant later made running objections to testimony regarding incidents, objections were untimely and did not preserve error for appeal).

In the present case, appellant made an objection, early in the complainant's testimony, that questions regarding the complainant's cancer treatment were irrelevant and unfairly prejudicial. This objection was overruled, and appellant did not at that time request a continuing objection nor lodge any further objection. The prosecutor went on to ask the complainant nine more questions about her cancer treatment, and the complainant responded with details about her treatment, including its nature and frequency, without any objections from appellant as to relevance or unfair prejudice. Only after such testimony was already before the jury, without objection, did appellant renew her Rule 402 and 403 objections and ask for a continuing objection "on those [*sic*] line of questions." Appellant failed to preserve her complaints for appellate review. *Ethington,* 819 S.W.2d at 859–60; *Salazar,* 131 S.W.3d at 214–15; *Cole,* 987 S.W.2d at 895. We overrule appellant's third issue.

**B. Admission of videotape**

■■■■ In her fourth issue, appellant complains of the trial court's admission of the Mervyn's store videotape, which she contends was admitted without proper authentication. Appellant specifically asserts that, in order for a videotape to be admitted, the sponsoring witness must be the videographer or a person who observed the scene depicted on the video. Appellant argues that Paul Parent, the loss-prevention officer for Mervyn's and the witness through whom the tape was sponsored, lacked personal knowledge because he did not operate the camera or witness the events on the tape, and, therefore, the trial court abused its discretion in admitting the videotape.[5]

5. Appellant relies on *Farrell v. State,* 837 S.W.2d 395 (Tex.App.-Dallas 1992), *aff'd,* 864 S.W.2d 501 (Tex.Crim.App.1993) and *Roy v. State,* 608 S.W.2d 645 (Tex.Crim.App.1980).

The authentication requirement for the admission of evidence is set out in Texas Rule of Evidence 901. Tex.R. Evid. 901; *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim.App.1998). This requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex.R. Evid. 901(a). We review the trial court's decision that the authentication requirement was met under an abuse of discretion standard. *Angleton*, 971 S.W.2d at 67.

We recently addressed a similar complaint in *Page v. State*, 125 S.W.3d 640, 648–49 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). Page argued that the videotape of a robbery was not properly authenticated because it was sponsored through the store's loss-prevention investigator, who was not present at the store at the time of the robbery. *Id.* at 645, 648. We noted that the authentication requirement is set out in Texas Rule of Evidence 901 and is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* at 648. In *Page*, the sponsoring witness explained the functioning of the store's 16–camera digital recording system and how he had accessed recorded images from the system shortly after the robbery, reviewed the recording with the police, copied the recording onto a videotape, and given it to the officers. *Id.* He also testified that he

had viewed the videotape before trial and it had not been altered. *Id.* We held that such evidence was sufficient to enable a reasonable juror to conclude that the videotape was what the State claimed it was, and, therefore, the trial court did not abuse its discretion in admitting the videotape into evidence. *Page*, 125 S.W.3d at 649.

*Page* governs the resolution of appellant's fourth issue. As in *Page*, the sponsoring witness, Paul Parent, the loss-prevention officer for Mervyn's, was not present at the time of the incident. However, Parent described the intricacies of the store's multiplex recording system and its computer systems; he detailed how he was able to link the encoding on the receipts to the time and date that the account was opened, to the transactions in question, to the cashier, to the terminal, and finally to the video camera that recorded the transactions; and he testified that he had personally copied the relevant recordings from the multiplex to the videotape. He further testified that he had viewed the video on the multiplex system, viewed it on the tape on the day that he made the tape, and then viewed it again on the day prior to his testimony and that it fairly and accurately represented what it purported to show, namely, the events captured by the multiplex system on Sep-

---

Both cases analyzed the sufficiency of the authentication of videotapes utilizing pre-rules predicate requirements. *Farrell*, 837 S.W.2d at 400; *Roy*, 608 S.W.2d at 649. While this was once the law in Texas, *see Kephart v. State*, 875 S.W.2d 319, 321–23 (Tex.Crim.App.1994) (holding pre-rules predicate requirements still applicable even after enactment of Rule 901), it is no longer. The appending of pre-rules predicate requirements onto the authentication requirements of Rule 901 was explicitly rejected by the Court of Criminal Appeals in *Angleton v. State*, which overruled *Kephart*. *Angleton v. State*, 971 S.W.2d 65, 69 (Tex.Crim.App.

1998). Authentication requirements are now governed solely by Texas Rule of Evidence 901. *Id.* at 67, 69. Under rule 901, it is no longer a necessary predicate to the admission of recorded evidence that the sponsoring witness have personal knowledge of the events on the recording. *Id.* at 67, 69–70 (J. Meyers, dissenting); *see also Reavis v. State*, 84 S.W.3d 716, 719–20 (Tex.App.-Fort Worth 2002, no pet.) (discussing and rejecting argument that sponsoring witness was required to have witnessed events depicted in videotape in order for it to have been properly authenticated).

tember 9, 2005. Parent testified that no alterations or deletions were made to the videotape.

This testimony is sufficient to enable a reasonable juror to conclude that the videotape was what the State claimed it was. *See Page*, 125 S.W.3d at 648–49. We hold that the trial court did not abuse its discretion in admitting the videotape into evidence, and we overrule appellant's fourth issue.

## Motion for Directed Verdict

In her fifth issue, appellant asserts that the trial court erred in denying her motion for directed verdict on the ground that venue in Fort Bend County was not proven by a preponderance of the evidence. Appellant argues that the State did not present specific testimony that of appellant's actions took place in Fort Bend County. The State responds that both Packard and Parent testified that the Mervyn's store where appellant utilized complainant's identifying information to open a credit card account was in Fort Bend County.

## A. Standard of review

A challenge to a trial court's denial of a motion for instructed verdict on the ground that the State failed to prove an essential element of an offense is construed as a challenge to the legal sufficiency of the evidence. *Canales v. State*, 98 S.W.3d 690, 693 (Tex.Crim.App.2003). Similarly, we view a challenge to a trial court's denial of a motion for instructed verdict on the ground that venue was not proven as an attack on the sufficiency of

the evidence to establish venue. *See Duvall v. State*, 189 S.W.3d 828, 830–31 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd).

Though venue must be established, it is not a "criminative fact" and so not a constituent element of an offense. *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex.Crim.App.1981). Therefore, it need only be proven by a preponderance of the evidence. *Id.; see also* TEX.CODE CRIM. PROC. ANN. art.13.17 (Vernon 2005) ("To sustain the allegation of venue, it shall only be necessary to prove [venue] by the preponderance of the evidence . . ."). As venue is not an essential element of an offense,[6] the sufficiency of the evidence to establish venue is not reviewed under the traditional *Jackson v. Virginia*[7] standard, nor any other standard established for reviewing the sufficiency of the essential elements of an offense, but under a distinct and specific standard articulated by the Court of Criminal Appeals in *Rippee v. State. See Rippee v. State*, 384 S.W.2d 717, 718 (Tex.Crim.App.1964). Under this standard, evidence is sufficient to establish venue if "from the evidence the jury may reasonably conclude that the offense was committed in the county alleged." *Id.; Rangel v. State*, 199 S.W.3d 523, 537 (Tex. App.-Fort Worth 2006) (citing *Rippee*), *pet. dism'd, improvidently granted*, 250 S.W.3d 96 (Tex.Crim.App.2008); *Duvall*, 189 S.W.3d at 831 (same); *Sudds v. State*, 140 S.W.3d 813, 816 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (same); 40 George E. Dix & Robert O. Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 2.87 (2nd ed., Supp.2008–2009)

---

**6.** *Boyle v. State*, 820 S.W.2d 122, 140 (Tex. Crim.App.1989), *overruled on other grounds by Gordon v. State*, 801 S.W.2d 899, 911 n. 13 (Tex.Crim.App.1990); *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex.Crim.App.1981).

**7.** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

(venue is sufficiently proven "if there is evidence from which a trier of fact could conclude that an element of the offense occurred in the county of prosecution"); [8] *see also Murphy v. State*, 112 S.W.3d 592, 605 (Tex.Crim.App.2003) (holding evidence sufficient where rational jury could have concluded venue proper).

In *Duvall*, which also involved the review of the denial of a motion for directed verdict which challenged the sufficiency of the evidence to establish venue, we noted—in a general introduction to our review of the issue—that a motion for directed verdict is construed as a challenge to the legal sufficiency of the evidence, and then we stated:

> In a legal-sufficiency review, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt (or, for venue, whether any rational trier of fact

could have found, by a preponderance of the evidence, that the offense occurred in the county alleged).

*Duvall*, 189 S.W.3d at 830.

This statement, however, was dictum, and, subsequently, in our specific discussion of the particular standard of review to be used in determining the sufficiency of evidence to establish venue, we cited the *Rippee* standard. *Duvall*, 189 S.W.3d at 831.[9] We then applied the *Rippee* standard in our resolution of the issue. *Id.*[10] To the extent that our *Duvall* dictum can be construed as articulating a different standard of review than that established in *Rippee*,[11] we disavow it.

Accordingly, when reviewing the sufficiency of the evidence to establish venue, we determine whether the trier of fact could reasonably conclude from the evidence that the offense was committed in the county alleged. *Rippee*, 384 S.W.2d at 718; *Duvall*, 189 S.W.3d at 831.

---

**8.** The standard of *Rippee v. State*, 384 S.W.2d 717, 718 (Tex.Crim.App.1964), applies even if venue is included in a charging paragraph-such as that in the present case-which requires that the jury find "beyond a reasonable doubt" that the defendant committed the offense in a particular county. *See* 40 George E. Dix & Robert O. Dawson, Texas Practice. Criminal Practice and Procedure § 2.87 (2nd ed., Supp.2008–2009).

**9.** We stated that "[e]vidence is sufficient to establish venue if the jury could reasonably conclude from the evidence that the offense occurred in the county alleged." *Duvall v. State*, 189 S.W.3d 828, 831 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (citing to *Couchman v. State*, 3 S.W.3d 155, 161 (Tex.App.-Fort Worth 1999, pet. ref'd), which relied on *Rippee* ).

**10.** "We hold that a jury could rationally have concluded that [the offense] occurred in [the county alleged]." *Duvall*, 189 S.W.3d at 831.

**11.** *See Witt v. State*, 237 S.W.3d 394, 399 (Tex.App.-Waco 2007, pet. ref'd); *Cooks v.*

State, No. 06–07–00002–CR, 2008 WL 313050, at *4 (Tex.App.-Texarkana, February 6, 2008, pet.ref'd) (mem. op., not designated for publication); *Palmer v. State*, No. 06–07–00053–CR, 2007 WL 4244978, at *1 (Tex.App.-Texarkana, December 5, 2007, no pet.) (mem. op., not designated for publication); *Webster v. State*, No. 06–07–00085–CR, 2007 WL 3399048, at *2 (Tex.App.-Texarkana, November 16, 2007, no pet.) (mem. op., not designated for publication); *see also Sudds v. State*, 140 S.W.3d 813, 816–18 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (discussing *Rippee* standard, comparing application of *Rippee* standard to application of traditional standards of review for legal and factual sufficiency in determining sufficiency of evidence to establish venue, and concluding that, until Court of Criminal Appeals clarified appropriate standard of review for challenging legal sufficiency of venue determinations, Fourteenth Court of Appeals would continue to apply *Rippee* standard).

## B. Sufficiency of evidence to establish venue

 The evidence at trial demonstrated that appellant had given identifying information to Sybil Moji, a sales associate at a Mervyn's store, in order to apply for a store credit account. This transaction was captured on the store's recording system and Parent, the loss prevention officer for the store, copied the recorded transaction onto videotape, which was admitted into evidence at trial. Parent testified that the store that he was assigned to was in First Colony Mall, Sugar Land, Texas, and its boundaries were entirely within Fort Bend County. Detective Packard also testified that "the location where the videotape . . . was shot," and the business where he interviewed Parent and Moji, was at First Colony Mall, in Sugar Land, and located within Fort Bend County.

 Venue may be proved by direct or circumstantial evidence, *Black v. State,* 645 S.W.2d 789, 791 (Tex.Crim.App.1983), and a jury may make reasonable inferences from the evidence to decide the issue of venue. *Edwards v. State,* 97 S.W.3d 279, 285 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). The jury could have reasonably concluded from the evidence that the offense occurred within Fort Bend County, Texas. We overrule appellant's fifth issue.

### Closing Argument

 In her sixth and final issue, appellant complains that the trial court erred in overruling her objection to a comment made by the State in closing argument. The relevant portion of the record is as follows.

> State: Okay. I anticipate defense counsel is going to tell you, well, Mayor Speck got special treatment. Okay? That Ranger didn't need to be involved. What he's doing is taking off focus of what it is. He is going to tell you Mervyn's shouldn't have given her that credit; that was too easy; shouldn't be allowed to go in there with the name. Whether or not you believe that's [*sic*], that's not why we're here. That's a [*sic*] take focus off what she did. She's the reason we're here. She's on trial. *Make them explain to you what more evidence there is than what we have.* Other than you being there, which [*sic*] a hundred percent proof, and we've talked about that in Voir Dire, they can't tell you why Sue Speck shouldn't be interested in this case.

> Defense Counsel: Objection, Your Honor. I believe—may I approach?

> Court: Yes, you may.

> (Outside the hearing of the jury)

> Defense Counsel: Your Honor, defendant does not have to testify. Her comments are borderline on the defendant's failure to testify, what defense counsel has to prove.

> State: I don't get this segue. I said make him tell you what more evidence we could bring—we could bring.

> Defense Counsel: The defendant tell— that comes under the defendant's—

> Court: Well, I think the instruction is very clear. Just be careful.

> Defense Counsel: And for the record— for the record, I move for a mistrial.

> Court: I understand. Overruled. You may continue your argument.

(Emphasis added.)

On appeal, appellant complains of the statement: "Make them explain to you what more evidence there is than what we have." Appellant argues that this statement was an improper comment on appellant's failure to testify and that the trial

court erred in denying her objection on those grounds.

Review of the record indicates that appellant's objection was never ruled on by the trial court. Appellant may therefore not complain now on appeal of the "denial" of this objection; the judge's response that "the instruction was clear," and his admonition to "[j]ust be careful," was not an adverse ruling. Appellant did not press for a ruling on her objection nor object to the trial court's failure to rule on the objection, so she has not preserved any error regarding her objection.[12] Tex.R.App. P. 33.1(a)(2); *Cockrell*, 933 S.W.2d at 89; *De-Russe*, 579 S.W.2d at 235.

Moreover, the complained-of comment, viewed from the jury's standpoint and within the context in which it was made, was not a clear reference to appellant's failure to testify, nor was such language manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on her failure to testify. *See Bustamante v. State*, 48 S.W.3d 761, 765 (Tex.Crim.App.2001)("The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify."). Rather, the argument, viewed in context, was a challenge to defense counsel to explain what additional evidence the *State* had to bring in order to establish appellant's guilt. It was not a comment on appellant's failure to bring evidence, much less her failure to testify.

We overrule appellant's sixth issue.

## Conclusion

We affirm the judgment of the trial court.

---

12. Appellant instead moved directly for a mistrial. Appellant's motion for mistrial was denied by the trial court but appellant does not raise an appellate challenge of this denial. Appellant specifically and exclusively asserts that the trial court erred in denying her "objection." There is no reference to the applicable standard of review nor any discussion of any of the factors to be considered in the grant or denial of a request for a mistrial. Accordingly, any complaint of the trial court's denial of the request for mistrial has been forfeited. *See* Tex.R.App. P. 38.1(i); *Jones*, 119 S.W.3d at 784.