Opinion issued August 12, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO.
01-09-00200-CR

———————————

Charles Edward Bryant, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 241st District
Court

Smith County, Texas



Trial Court Case No. 241-1524-08

 



O P I N I O N

          A
jury convicted appellant Charles Edward Bryant of aggravated sexual assault of
a child and assessed punishment at 18 years’ imprisonment.  See
Tex. Penal Code Ann. § 22.021
(Vernon Supp. 2009).[1]  Bryant brings four issues on appeal.  In his first three issues, he challenges the
trial court’s admission of testimony from a investigator about (1) the concept
of sexual predators “grooming” their victims, (2) his belief at the time
he prepared an affidavit to support a warrant for Bryant’s arrest that an
offense had occurred, and (3) the fact that Bryant never returned his phone
calls.  In his fourth issue, Bryant
argues that the trial court erred by failing to grant a mistrial after the
State improperly suggested in closing argument that Bryant may have committed
prior offenses.  

          We
affirm.

Background

Telephone Relationship

The complainant, K.G., was 13 years
old when she spent a summer with her 19-year-old cousin, C.J., and their
grandmother.  C.J. had a relationship
with Bryant’s cousin, and C.J. sometimes spoke to Bryant on the telephone.  Without having met him in person, K.G. began
speaking to Bryant on the telephone as well.

Initially, K.G. told Bryant that
she was 16 years old, and, although he was actually 28 years old, he told her
that he was 20.  Over the course of
approximately 50 daily telephone calls, which were usually initiated by C.J. or
K.G., Bryant discussed with K.G. “ordinary things about life in general.”  K.G. said they never discussed sex.  At trial she testified that she told Bryant
that she was only 13 years old, and that “[h]e didn’t say it would make a
difference in anything.”  Over the course
of the telephone conversations, Bryant did not ask where K.G. lived or attempt
to see her until the night of the offense.

The Assault

          One
night around 1:00 a.m., Bryant told K.G. that his cousin wanted to see C.J.,
and he asked if they could come over. 
K.G. agreed, and Bryant and his cousin arrived approximately an hour
later.  When they arrived, a dog began
barking, and K.G.’s grandmother awoke. 
C.J. took the two men to the garage, where they hid for approximately 30
minutes until the grandmother went back to sleep.

          At
trial, K.G. said that Bryant “pulled” her into the garage, where he kissed and
fondled her, while their cousins were together inside the house.  She testified that Bryant contacted her
“private area” with his mouth and penetrated it with his tongue while they were
in the garage and later when they were inside the house and their cousins were
in the garage.  K.G. testified that
although she felt uneasy about the sexual contact, she did not say “no.”  She said that at one point Bryant asked her
if she wanted him to stop, and she declined. 
However, K.G. also testified that she never intended to engage in sexual
contact with Bryant.

A few days later, while watching a
sex scene in a movie, C.J. told her grandmother that she had sex in the house a
few days earlier.  The girls’ grandmother
questioned them about the incident and sent K.G. home to her parents.  K.G. was interviewed at the Children’s
Advocacy Center, where she said that it hurt when Bryant penetrated her with
his tongue.  Bryant was later charged with
aggravated sexual assault of a child.

The Investigator’s Testimony

A Tyler Police Department
investigator investigated the assault. 
The investigator testified that he was a certified police officer
assigned to the Crimes Against Children Unit of the Major Crimes
Department.  He testified that he had
been conducting police investigations for two years and four months and that he
had received “lots of specialized training . . . hundreds of hours of
everything from child abuse to child sex crimes to neglect.  Anything to do with a child being under 17
years old, I typically deal with that.” 
He testified that he had seen interviews of approximately 100 children
in the two years preceding trial.  The
investigator testified without objection that, under Texas law, a 13-year-old
cannot consent to sex.  The State
questioned him, over Bryant’s objections, about how an adult might “groom” a
child prior to a sexual assault. 

Bryant’s trial counsel
cross-examined the investigator about discrepancies between the investigator’s
affidavit and statements by K.G. in her interview and her trial testimony.  On redirect, the State asked a series of
questions about the affidavit.  When the
State asked for the investigator’s conclusion about whether an assault had
occurred, Bryant objected, and the trial court overruled the objection.  The investigator then testified, “Yes, I did
come to the conclusion that a sexual assault had occurred.”

Alibi Evidence

Bryant, however, attempted to paint
a different picture by offering alibi witnesses.  Bryant’s roommate testified that she and a
coworker borrowed Bryant’s car on the night in question.  Both women testified that on the night they
borrowed his car, Bryant was babysitting their five children who ranged in age
from infancy to 13 years old.  Both
recalled that night because Bryant’s car was not working properly and they had
to push it into a parking space.  The
roommate’s coworker specifically remembered that it was a Tuesday night and
testified that she did not work the following night.  On cross-examination, the State confronted
her with a calendar, which showed that the night in question was a Wednesday,
not a Tuesday, undermining Bryant’s alibi. 
Yet another coworker who testified she saw the women struggling with the
malfunctioning car also testified that these events occurred on a Tuesday
night.

The State cross-examined the
roommate and her coworker about why they did not come forward with the alleged
babysitting alibi information before trial, and both women said they did not
know or they did not know whom to contact. 
In rebuttal, the State recalled the police investigator, who testified
that he spoke to the roommate, that she told him his phone number at the Children’s
Advocacy Center appeared on her caller ID, and that neither Bryant nor the
roommate returned his call.  Bryant’s
attorney objected to the question about whether Bryant ever called the
investigator, arguing that the question violated Bryant’s Fifth Amendment
rights, and the trial court overruled the objection.

Closing Argument

          In
closing argument, the prosecutor repeatedly referred to Bryant as a “predator,”
without objection by defense counsel. 
The prosecutor also argued without objection that if K.G. and her cousin
had “not given in to these two guys, they could have been hurt.”  He said, “[T]hese guys . . . were going to do
it whether they allowed them to do it or not.” 
The prosecutor also suggested that Bryant may have committed a previous
assault.

          The
jury found Bryant guilty of aggravated sexual assault of a child, and he
appeals from that conviction.

EXPERT OPINION TESTIMONY
ABOUT “GROOMING”

          In
his first issue, Bryant argues that the trial court erred by admitting the
investigator’s testimony regarding grooming of a prospective child victim of
sexual assault.  Bryant argues that the
investigator was not qualified to offer this testimony because he lacked
sufficient depth of experience and training to support an expert opinion.[2]

Standard of Review

We review a trial court’s ruling on
the admissibility of expert testimony for an abuse of discretion.  Layton
v. State, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  As particularly relevant to the issue raised
in this appeal, a trial court’s determination that a witness is or is not
qualified to testify as an expert is afforded great deference.  Davis
v. State, No. AP-75,796, 2010 WL 2382567, at *24 (Tex. Crim. App. June 16,
2010); Rodgers v. State, 205 S.W.3d
525, 527–28 (Tex. Crim. App. 2006).  Such
rulings will rarely be disturbed by an appellate court.  Vela v.
State, 209 S.W.3d 128, 136 (Tex. Crim. App. 2006); Rodgers, 205 S.W.3d at 528 n.9. 
As with other types of evidentiary rulings, we will uphold the trial
court’s decision unless it lies outside the zone of reasonable
disagreement.  Layton, 280 S.W.3d at 240 (citing Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

Qualifications Necessary to Provide Expert
Opinion Testimony

Rule 702 of the Texas Rules of
Evidence provides that “[i]f scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.”  Tex. R. Evid. 702.  The qualifications of an expert witness are
distinct from the reliability and relevance of the opinion testimony and,
therefore, they should be evaluated independently.  Vela,
209 S.W.3d at 131.  The evaluation of an
expert’s qualifications entails a two-step inquiry: “[a] witness must first
have a sufficient background in a particular field, but a trial judge must then
determine whether that background ‘goes to the very matter on which [the
witness] is to give an opinion.’”  Id. (quoting Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996)).  To be qualified to give expert opinion
testimony, the witness “must possess some additional knowledge or expertise
beyond that possessed by the average person, but the gap need not necessarily
be monumental.”  Davis, 2010 WL 2382567 at *24.

          In Rodgers v. State, the Court of Criminal
Appeals outlined three criteria to be used in assessing whether a trial court
has clearly abused its discretion in ruling on an expert’s qualifications.  These include (1) whether the field of
expertise is complex; (2) how conclusive the expert’s opinion is; and (3) the
centrality of the area of expertise to the resolution of the lawsuit.  205 S.W.3d at 528.  In considering these criteria, “the appellate
court must review the trial court’s ruling in light of what was before that
court at the time the ruling was made.”  Id. at 528–29 (citing Weatherred, 15 S.W.3d at 542).

Analysis

The officer whose opinion testimony
is at issue testified that he was the lead investigator in K.G.’s case.  At the time of trial he had been conducting
investigations for the Tyler Police Department for two years and four months
while assigned to a unit dedicated to investigating crimes against
children.  He said that he was the
primary investigator for all crimes against a child aged 17 and younger and he
had seen close to 100 interviews of children. 
In order to become a certified peace officer, he testified that he was
required to attend an academy that lasted approximately 20 weeks and pass a
test of the Texas Commission on Law Enforcement Officer Standards and Education
(TCLEOSE).[3]  Since being hired by the Tyler police, the
investigator testified that he had received “hundreds of hours” of additional
training in “everything from child abuse to child sex crimes to neglect.”  He also specifically testified that he was “trained
in conferences and all kinds of different training” about grooming.

Bryant objected when the
investigator was asked about how an adult might “groom” a child prior to a
sexual assault.  The objection was
overruled, and the investigator proceeded to testify about the process by which
an older man could establish a rapport with a young girl and manipulate her
into engaging in sex.  We set forth the
relevant questions, objections, and responses in their entirety:

STATE:      . . . [T]hrough your training and experience
in cases like this where you have a young child and an older man, is it unusual
for the man to offer to take her places or offer to talk about different
things, singing on the phone, that kind of thing?  Is that unusual?

 

DEFENSE COUNSEL: Judge, I’m going to object to discuss[ing]
other cases.  It’s outside his expertise,
Your Honor.  Also, the jury is the
fact-finders of this case, Your Honor.

 

TRIAL COURT:  They are the fact-finders of the case, but
this is—according to the detective’s testimony and experience and a detective
in this area, I’m going to allow him to give his opinion.

 

Go ahead, Detective.

 

WITNESS: Based on the cases that I’ve worked and my
training and experience, I find that in a situation like this, where you have a
young girl and an older man, there tends to be things like that going on.  They try to find—the older adult—it doesn’t
necessarily have to be a man—the older adult tries to find something in common
with the younger child so that they can make a connection.

 

STATE:      Why do they do that?

 

DEFENSE COUNSEL: Your Honor, I’m going to renew my
objection.  Again, Judge, that’s outside
his expertise.

 

THE COURT:      The Court’s ruling is the same. The
objection overruled.

 

Go ahead, Detective.

 

WITNESS: We’re trained in conferences and all kinds of
different training that it’s called grooming, a term they use.

 

They
use it for online -- online grooming is where they build rapport with the
child, and they become more friendly and more friendly.  And over time, they build a relationship, and
then they’re able to move further into it. 
And then it becomes a sexual relationship.

 

STATE:      And what is a person that’s trying to
manipulate a young girl to finally have contact -- what kind of rapport do they
have to build with them?

 

DEFENSE COUNSEL: Judge, again, it’s going outside his
expertise.  Judge, I’m going to object.

 

THE COURT:      All right. The Court’s ruling is the same.
The objection is overruled.  

 

You may answer, Detective.

 

WITNESS: Children are all different. Sometimes it may
take a lot of rapport-building with them; sometimes it may take a little
bit.  So that person will have to develop
enough security where they can feel comfortable to move on to the next level.

 

. . . .

 

STATE:      And one last question: Is it unusual for
somebody like the defendant here to be able to manipulate a young girl, who’s
never even had sex before, into doing something she wouldn’t ordinarily do?

 

DEFENSE COUNSEL: Judge, I’m going to object.  It goes outside his expertise, not a
psychiatrist or a psychologist, talking about manipulation, Your Honor.  I’m going to object.

 

THE COURT:      The objection is overruled.

 

Go ahead, Detective. Have you got the question?

 

THE
WITNESS:  I think I need the question
again.

 

THE COURT:      Restate it . . . .

 

STATE:      Is it unusual in this kind of situation
for a predator to manipulate a young girl into doing something they wouldn’t
ordinarily do?

 

THE WITNESS:  It’s not unusual at all.  Grooming is a common technique used.  There’s plenty of research on it, and it’s
common.

 

Most
people are not going to walk in and be able to automatically move into a sexual
relationship with a child.  So you have
to have some kind of manipulation to begin with.  So it’s very common for this to occur.

 

          Applying
the criteria discussed in Rodgers, we
conclude that the trial court did not abuse its discretion by overruling the
objections to the investigator’s qualifications to testify.  First, as applied to this particular
testimony, the field of the witness’s expertise was not particularly
complex.  “The degree of education,
training, or experience that a witness should have before he can qualify as an
expert is directly related to the complexity of the field about which he
proposes to testify.”  Rodgers, 205 S.W.3d at 528 (citing Broders, 924 S.W.2d at 153; Perez v. State, 113 S.W.3d 819, 831–34
(Tex. App.—Austin 2003, pet. ref’d)). 
The testimony quoted above establishes that the investigator did not
purport to perform any particularly specialized analysis of the relationship
and interactions between Bryant and K.G. 
He merely related that his training had familiarized him with the
concept of grooming—at bottom a
relatively common-sense proposition that an adult must establish some level of
rapport with a child before being able to manipulate the child into engaging in
sexual conduct—and that he had
observed similar and consistent circumstances in his own experience
investigating crimes involving children. 
As noted in Rodgers, “[i]f the
expert evidence is close to the jury’s common understanding, the witness’s
qualifications are less important than when the evidence is well outside the
jury’s own experience.”  Id.;
see also Davis, 2010 WL 2382567,
at *24.  That was the case here.

Second, the investigator’s
testimony about grooming was not conclusive of anything.  It served the function of providing
background information to the jury, rather than offering an opinion that, if
accepted by the jury, might resolve any material issue in the case.

Finally, within the context of all
the evidence presented, this testimony was not particularly central to
determining Bryant’s guilt or innocence. 
The discussion of grooming served to provide some explanation to the
jury of the significance of the numerous telephone calls between Bryant and
K.G. and how they may have empowered Bryant to take advantage of the
child.  But that testimony was conclusive
of nothing directly relevant to the elements of the charged crime of aggravated
sexual assault.  To decide the question
of Bryant’s guilt or innocence, the jury had to evaluate the credibility of the
witnesses.  The information about
grooming could have influenced the jury’s credibility determinations, but only
in an indirect fashion.

We therefore hold that the trial
court did not abuse its discretion by overruling Bryant’s objections to the
qualifications of the police investigator to testify about grooming, and we
overrule Bryant’s first issue.

TESTIMONY ABOUT WHETHER AN
OFFENSE OCCURRED

Bryant’s counsel cross-examined the
police investigator about details that were omitted from the affidavit he
prepared to obtain a warrant for Bryant’s arrest.  On redirect, the State questioned the
investigator about all the details he included in that affidavit.  In that context, the investigator testified
that at the time he prepared his affidavit, he had concluded a sexual assault
had occurred.  In his second issue,
Bryant asserts that the trial court erred by admitting the investigator’s
testimony that he concluded a sexual assault had occurred.  Bryant argues that this testimony supplanted
the jury by testifying that “science, experience, and training have reached the
conclusion of guilt in this case.”

Preservation of Error

The State contends that Bryant
waived this issue by making only a general objection.  Bryant’s trial counsel objected to the
State’s question as to what conclusion the investigator reached based on his
investigation. 

DEFENSE COUNSEL: Judge, I’m going to object, because on Billy
Long versus State of Texas out of the Twelfth Court of Appeals of this court
says you can’t do that, Your Honor.

 

TRIAL COURT:  [I]f you want to make a legal argument, you
need to make it to the Court.

 

DEFENSE COUNSEL: I object, Your Honor.

 

TRIAL COURT:  If you want to make a legal argument up here
at the bench, you can.  The jurors are
probably not too familiar with Billy Long.

 

DEFENSE COUNSEL: I know the Court is aware of it.

 

TRIAL COURT:  I am familiar with it, but the objection is
overruled. . . .

 

To preserve a complaint for
appellate review, a party must have presented a timely request, objection, or
motion stating the specific grounds for the ruling desired, unless the grounds
are apparent from the context of the objection. 
Tex. R. App. P. 33.1(a).  Ordinarily, a general objection preserves
nothing for review. Safari v. State,
961 S.W.2d 437, 442 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d, untimely
filed).  “There are, however, no
technical considerations or form of words that must be used to preserve error
so long as the objection sufficiently apprises the trial court and opposing counsel
of the nature of the complaint.”  Id. (citing Ex parte Little, 887 S.W.2d 62, 65 (Tex. Crim. App. 1994)).  “A general or imprecise objection may be
sufficient to preserve error for appeal, but only if the legal basis for the
objection is obvious to the court and
to opposing counsel.”  Buchanan v. State, 207 S.W.3d 772, 775
(Tex. Crim. App. 2006) (emphasis original).

Bryant’s counsel objected based on
“Billy Long versus State of Texas out of the Twelfth Court of Appeals.”  In Long
v. State, the defendant argued that the trial court erred in allowing an
expert witness to testify as to whether the complainant had testified
truthfully.  Long v. State, No. 12-07-00256-CR, 2008 WL 5050099, at *5 (Tex.
App.—Tyler Nov. 26, 2008, no pet.).  The
court of appeals noted that an expert may not testify that a witness is
truthful.  Id. at *4 (citing Yount v.
State, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993) and Lane v. State, 257 S.W.3d 22, 27 (Tex. App.—Houston [14th Dist.]
2008, pet. ref’d)).  The court also noted
that although an expert may testify about signs of coaching, coercion, or
suggestion, the expert may not testify that those signs are present in the case
being considered by the jury or that the complainant’s allegations are the result
of manipulation or fantasy.  Id. (citing Schutz v. State, 957 S.W.2d 52, 69–70 (Tex. Crim. App. 1997)).  

The State argues that Bryant’s
counsel made only a general objection and did not preserve anything for our
review.  However, the trial court twice acknowledged
that it was familiar with Long.  In this context, we conclude that the
specific grounds for Bryant’s trial court objection, i.e., that the witness
could not offer an opinion about the truthfulness of K.G.’s outcry, were
apparent to the court and opposing counsel based on the context.  See
Tex. R. App. P. 33.1(a).  Reference to precedent without further explanation may not
always be sufficient to preserve error, but in this case, the trial court twice
stated that it was familiar with Long.  We hold
that Bryant’s issue is not waived.

Ultimate Issue Testimony

“Expert testimony does not assist
the jury if it constitutes a ‘direct opinion on the truthfulness’ of a child
complainant’s allegations.”  Schutz v. State, 957 S.W.2d at 59
(quoting Yount, 872 S.W.2d at
708).  Testimony by an expert witness,
however, that provides useful background information to aid the jury in
evaluating the testimony of another witness is admissible.  See id.  Opinion testimony that is otherwise
admissible is not objectionable solely because it embraces an ultimate issue to
be decided by the trier of fact.  Tex. R. Evid. 704; Ex parte Nailor, 149 S.W.3d 125, 134 (Tex. Crim. App. 2004)
(describing officer’s testimony that defendant had not been attacked); Solomon v. State, 49 S.W.3d 356, 364
(Tex. Crim. App. 2001) (holding that lay witness properly offered opinion
regarding defendant’s criminal responsibility). 
The admissibility of such testimony is within the sound discretion of the
trial court and will not be disturbed absent a clear abuse of discretion.  See
Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993); see also Conner v. State, 891 S.W.2d
668, 670 (Tex. App.—Houston [1st Dist.] 1994, no pet.). 

On cross-examination, Bryant’s
trial counsel questioned the police investigator about discrepancies among his
affidavit, K.G.’s interview, and K.G.’s trial testimony.  On redirect examination, the prosecutor asked
the investigator a series of questions connecting K.G.’s interview statements
to statements in his affidavit.  After
the trial court overruled Bryant’s objection, the investigator testified that
he came to the conclusion a sexual assault had occurred and that is why he
prepared an affidavit to obtain an arrest warrant.

This appeal is distinguishable from
Long. 
In Long, the expert testified
that she testified only in cases in which she believed the complainant.  Long,
2008 WL 5050099, at *5–8.  In contrast,
in this appeal, the police investigator testified about what he relied upon to
determine whether he should swear out an affidavit to obtain a warrant for
Bryant’s arrest.  That testimony about
the factual background of a criminal investigation was materially different
from offering an opinion at trial that a child witness is telling the truth.[4]  We overrule Bryant’s second issue.

TESTIMONY ABOUT BRYANT’S
FAILURE TO CONTACT POLICE

          In
its rebuttal case, the State asked the police investigator, “Now, at any time,
did you get a call from Mr. Bryant?”  In
his third issue, Bryant argues that the trial court erred by overruling his
objection to this question, which he argues constituted a comment on his
invocation of his Fifth Amendment right to remain silent.

To preserve error in admitting
evidence, a party must make a proper objection and obtain a ruling on that
objection.  Tex. R. App. P. 33.1 (a)(1)–(2); Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App.
2004).  An appellant must object to each
instance in which the objectionable testimony is elicited.  Ethington
v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); Thierry v. State, 288 S.W.3d 80, 88 (Tex. App.—Houston [1st Dist.]
2009, pet. ref’d).

During the State’s case-in-chief,
the police investigator testified that he called Bryant’s roommate and left a
message with her that he needed to speak with Bryant.  The State asked, “Did Mr. Bryant ever contact
you?”  Defense counsel did not object,
and the investigator replied, “I never spoke with Mr. Bryant.”  Because the same evidence, that Bryant did
not contact or call the investigator, was previously admitted without
objection, Bryant waived any issue with respect to the subsequent question
during the State’s rebuttal case.  See Ethington, 819 S.W.2d at 858; Thierry, 288 S.W.3d at 88.  We overrule Bryant’s third issue.

MOTION FOR MISTRIAL

          In
his fourth issue, Bryant argues that the trial court erred by failing to grant
a mistrial following improper closing argument by the State.  

Standard of Review

We review a trial court’s ruling on
a motion for mistrial for abuse of discretion. 
Archie v. State, 221 S.W.3d
695, 699 (Tex. Crim. App. 2007).  We must
uphold the trial court’s ruling if it was within the zone of reasonable
disagreement.  Id.  “Only in extreme
circumstances, where the prejudice is incurable, will a mistrial be
required.”  Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  A trial court may properly exercise its
discretion to declare a mistrial if a verdict of conviction could be reached,
but would have to be reversed on appeal due to an obvious procedural error in
the trial.  Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).  The determination of whether a given error
necessitates a mistrial must be made by examining the particular facts of the
case.  Hernandez v. State, 805 S.W.2d 409, 413–414 (Tex. Crim. App. 1990).

Jury Argument

Contested jury argument must be
extreme or manifestly improper to constitute reversible error.  Sandoval
v. State, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). 
In general, proper jury argument encompasses one of the following: (1)
summation of the evidence presented at trial; (2) reasonable deductions drawn
from that evidence; (3) answers to the opposing counsel’s argument; and (4)
pleas for law enforcement.  Id.; Guidry
v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999).  In most cases, if error occurs, an
instruction to disregard will cure any error committed.  Shannon
v. State, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996); Cole v. State, 194 S.W.3d 538, 544 (Tex. App.—Houston [1st Dist.]
2006, pet. ref’d).

Improper jury argument does not
result in reversible error that warrants a mistrial unless the trial court’s
instruction to disregard would not cure any resulting harm.  Lucero
v. State, 246 S.W.3d 86, 101 (Tex. Crim. App. 2008).  We consider three factors when assessing the
impact of the harm arising from jury-argument error: (1) the severity of the
misconduct (the magnitude of the prejudicial effect of the prosecutor’s
remarks); (2) the measures adopted to cure the misconduct (the efficacy of any
cautionary instruction by the judge); and (3) the certainty of conviction
absent the misconduct (the strength of the evidence supporting the
conviction).  Berry v. State, 233 S.W.3d 847, 858–59 (Tex. Crim. App. 2007).

Analysis

          During
closing argument, the prosecutor suggested that Bryant may have committed prior
sexual assaults:

STATE:      There’s no doubt that it happened.  There’s nothing to gain.  [K.G.] doesn’t gain anything out of this and
would just as soon as not have been here. 
But that’s what makes this so scary. 
You’ve got a predator, the way it was done.  I submit to you, Ladies and Gentlemen, I hope this is the first time.  I don’t know. 


 

DEFENSE COUNSEL: Judge, I’m going to object.  That’s an improper argument, Your Honor.

 

          TRIAL COURT:  All
right.  The Court sustains the
objection.  

 

          DEFENSE COUNSEL: Judge,
we move for a mistrial.

 

          TRIAL COURT:  That’s
denied.

 

          DEFENSE COUNSEL: Instruct
the jury to disregard.

 

TRIAL COURT:  I’ll sustain the objection.  The jury will be instructed to disregard the
last comment of the prosecutor.

 

(Emphasis supplied.)

First, the prosecutor’s comment
does not amount to severe misconduct.  He
did not positively assert that Bryant had committed prior offenses or disclose
any known prior bad acts.  Although the
prosecutor inappropriately speculated, he did not repeat the statement after
Bryant objected.  Second, the trial court
instructed the jury to disregard the argument, and, in the absence of evidence
to the contrary, we presume that the jury heeded the trial court’s instruction
to disregard.  See Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App.
1998).  Third, as to the strength of the
evidence supporting the conviction, we note that K.G. testified unequivocally
that Bryant committed each element of aggravated sexual assault.  Her testimony, standing alone, is sufficient
to support Bryant’s conviction for aggravated sexual assault of a child.  Tex.
Code Crim. Proc. Ann. § 38.07; see
Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002,
pet. ref’d) (stating that testimony of victim, standing alone, even when victim
is child, is sufficient to support conviction for sexual assault).  Bryant’s defense consisted of alibi testimony
that the jury was free to disbelieve based upon credibility determinations or
questions raised in cross-examination about the dates of the offense and the
alibi.

          After
examining the State’s jury argument in light of these factors, we hold that the
prosecutor’s comments were inappropriate but insufficient to warrant disturbing
the trial court’s discretion to deny a new trial.  We overrule Bryant’s fourth issue.

CONCLUSION

          We affirm the trial court’s judgment.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Publish.   Tex. R. App. P. 47.2(b).











[1]        The Texas
Supreme Court transferred this appeal from the Court of Appeals for the Twelfth
District of Texas.  Misc. Docket No.
08-9177 (Tex. Dec. 15, 2008); see Tex.
Gov’t Code Ann. § 73.001 (Vernon 2005) (authorizing transfer of
cases).  We are unaware of any conflict
between precedent of the Court of Appeals for the Twelfth District and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[2]        Relying upon Dunnington v. State, 740 S.W.2d 896 (Tex. App.—El Paso 1987, pet.
ref’d), Bryant’s appellate brief also raises the issue that opinion testimony
about grooming was “neither needed nor permissible.”  However he objected at trial only to the
scope of the investigator’s qualifications and expertise.  An initial objection that “the jury is the fact-finders
of this case” was not preserved throughout the line of questions concerning
grooming.  Accordingly, Bryant’s other
challenges to the admissibility of expert opinion testimony about “grooming”
have been waived.  See Tex. R. Evid. 103(a)(1);
Tex. R. App. P. 33.1(a).

 





[3]             “TCLEOSE sets the minimum
standards for enrollment, examination, and licensure relevant to becoming a
Texas peace officer.”  State v. Collazo, 264 S.W.3d 121, 125
(Tex. App.—Houston [1st Dist.] 2007, pet. ref’d).  TCLEOSE’s minimal standards for initial
licensure provide:

 

A person must successfully
complete the minimum training required for the license sought:

(1) training for the peace
officer license consists of:

(A) the current basic peace
officer course;

(B) a commission recognized,
POST developed, basic law enforcement training course, to include:

(i) out of state licensure
or certification; and

(ii) submission of the
current eligibility application and fee; or

(C) a commission approved
academic alternative program, taken through a licensed academic alternative
provider, and after September 1, 2003, at least an associate’s degree.

(2) training for the jailer
license consists of the current basic county corrections course(s);

(3) training for the public
security officer license consists of the current basic peace officer course;
and

(4) passing any examination
required for the license sought while the endorsement remains valid.

 

37 Tex. Admin. Code § 217.1(e) (2010).





[4]             Even if the trial court
erred in admitting this testimony, such error would be harmless.  Because this is nonconstitutional error, we would
reverse only if this error had a substantial and injurious effect or influence
on the jury’s verdict.  See Tex.
R. App. P. 44.2(b).  “We should
not overturn the conviction if we have fair assurance from an examination of
the record as a whole that the error did not influence the jury, or had but
slight effect.”  Taylor v. State, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008) (citing
Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998)).  The jury heard
K.G. testify and watched the videorecording of her interview at the Children’s
Advocacy Center.  And Bryant’s defense of
alibi relied on witnesses who swore that they borrowed his car the night before
the incident occurred.  Examining the
record as a whole, we conclude that any error in admitting the investigator’s
testimony that he concluded an assault occurred is harmless.