**AFFIRM; and Opinion Filed June 26, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00021-CR**

**ANTHONY GLENN DAVIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F10-61184-R**

## OPINION

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion by Justice Richter

A jury convicted Anthony Glenn Davis of aggravated robbery. He now complains in six issues that the trial court erred in permitting and excluding certain testimony, permitting the State to question appellant about the credibility of other trial witnesses, and permitting the prosecutor to argue facts not in evidence. Concluding appellant's arguments are without merit, we affirm the trial court's judgment. Because appellant does not challenge the sufficiency of the evidence against him, we will confine our fact recitations to their applicable issues.

Appellant's first and second issues pertain to testimony given by a fingerprint identification expert. The complainant in this case testified that appellant robbed her at gunpoint, forcing her to move from the driver's seat to the passenger seat of her car. He then drove to an

---

[1] The Hon. Martin Richter, Justice, Assigned

ATM machine and forced her to withdraw $400 and give it to him. Other trial testimony revealed that a fingerprint had been taken from the gear shift knob of the complainant's car. Dyna Osuna, a forensic fingerprint expert, testified that she received the fingerprint and conducted computer analysis to find potential subjects for comparison. Over appellant's hearsay objection, Osuna stated that the computer system linked the fingerprint to appellant.

After the computer showed appellant as a match for the fingerprint, Osuna compared the fingerprint from the car with a ten-print card from appellant and determined there was a match. She then passed the prints on to another examiner to confirm her determination. If the examiner had differed with Osuna about the fingerprint analysis, then a supervisor would have passed the work on to yet another examiner to perform the print analysis. Osuna testified that the supervisor did not have to pass the work along to another examiner.

After Osuna confirmed that her supervisor did not have to pass on the work to another examiner, appellant objected that the State could not "talk about scientific tests without the actual performer of the test being present." The trial court overruled the objection, then Osuna testified (without objection) that once the analysis was verified, she notified the detective in the case. She testified, "And then once that was done, the whole case file goes back to the other examiner that verified my prints, they conduct another evaluation of my whole case file, make sure everything matches and says what it should be, and then it goes to my supervisor who then also does a tech review on my case files." Osuna further testified that she had compared the fingerprint from the car to fingerprints she had collected from appellant that morning and confirmed that the car fingerprint belonged to appellant.

In his first issue, appellant complains the trial court violated his right to confrontation when it permitted Osuna to testify that her peer reviewer agreed with her conclusion. But appellant did not object to the testimony in a timely manner. By the time appellant objected,

Osuna had already testified that a supervisor did not have to reassign her work because she and the peer reviewer agreed on their conclusions. She explained that in the case where the peer reviewer disagrees with the first analyst's conclusions, "the supervisor would hand that case to another examiner, without giving them the background, to let them determine whether that print was made." Appellant did not object when the prosecutor asked, "Did that happen at all in this case?" He did not object until after Osuna responded to the question, "No, ma'am."

To preserve a claim of Confrontation Clause error, a defendant must make a timely and specific objection to the complained-of evidence. *See Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). If a defendant fails to object until after an objectionable question has been asked and answered and he cannot show a legitimate reason to justify the delay, his objection is untimely and error is waived. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997). Appellant offers no explanation to justify why his objection followed the answer rather than the question in this case. Accordingly, by failing to object in a timely fashion at trial, he has waived his complaint for appeal. We resolve appellant's first issue against him.

In his second issue, appellant complains the trial court permitted Osuna to testify about the results of the computer analysis of the car fingerprint. He argues that the computer's identification of appellant as the source of the fingerprint amounted to hearsay testimony. Hearsay consists of a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. A declarant is a person who makes a statement. *Stevenson v. State*, 920 S.W.2d 342, 343 (Tex. App.—Dallas 1996, no pet.) (citing Tex. R. Evid. 801). Here, Osuna received the analysis from a computer, not a person. By definition, therefore, the computer was not a declarant and the information was not hearsay.

This is not a situation where the information provided by the computer was merely feedback of computer-stored data, which would be hearsay. The information reflected on the computer readout is the result of the computer's internal operations. Because the computer in this case was not a declarant, the data it generated was not a statement and could not be hearsay. *See id*. at 343–44. Because appellant's hearsay objection was without merit, the trial court did not err in overruling it. We resolve appellant's second issue against him.

In his next issue, appellant complains about a police officer's testimony at punishment revealing that when he was arresting appellant for an additional offense, he observed appellant with cocaine. Officer Nathan Delahoussaye testified that while he was on patrol in uniform for the Dallas Housing Authority in an apartment parking lot, he saw appellant with two other men he knew did not live in the complex. As he approached the three men, they walked away from him. When he called out to the men, appellant's companions walked to him but appellant continued walking away.

Delahoussaye called out to appellant again. Then appellant turned around. Delahoussaye testified,

> He turned around. I observed a glass crack pipe in his hand. He placed his hand in his coat pocket. I walked towards him, said, Take your hands out of your pockets. At that point he took his hands out of the pockets again, he handed me the glass crack pipe, I took that from him. I started kind of walking beside him, we were going to walk back to the police car between the vehicles. At that point he put his hands back in his pockets. I told him again, Take your hands out of your pockets. At that point he took his hands out.

Delahoussaye stated that when appellant complied with his request to take his hands out of his pockets, "he took his hands out very quickly, started to spin around. I noticed a large piece of white crack cocaine in his hand."

At that point, there was an unreported discussion at the bench. Afterward, the trial court instructed appellant to state his objection. Appellant then objected that he was not given notice

under code of criminal procedure article 37.07 of the possession of cocaine and also that "there has been improper foundation as far as laying a scientific foundation for testimony regarding the actual substance of cocaine." The State agreed that Delahoussaye "did not have the training to say whether or not that was drugs, so we'll move past that." The trial court sustained appellant's objection. When appellant requested that the judge ask the jury to disregard the evidence, the trial judge said, "Members of the jury there was a reference to a crack pipe. I'm instructing you to disregard that."

When the prosecutor pointed out that the parties had actually agreed that testimony about the rock was inadmissible, the trial judge stated, "Well, he objected on the side-bar as to the paraphernalia . . . . That's the extraneous offense, correct?" The prosecutor then said she thought appellant's objection was "to the rock, he couldn't say whether or not it was tested." The trial judge responded, "He said over here drug paraphernalia." Appellant never participated in the exchange or raised an additional objection. The trial judge said, "So disregard that." At that point, appellant moved for a mistrial, which the trial court denied.

Afterward, the officer continued,

> He turned around. He was trying to place something in his mouth; I don't know, it was a white substance in his mouth. I reached up and slapped his hand to prevent him from placing something in his mouth, I knocked his hand down, continued to spin around, lost sight of whatever he had in his hand. He was going around, I grabbed ahold of him. He's pulling around, pushed me, punched me in the chest.

After punching Delahoussaye, appellant fled from him, running approximately four blocks through residences and jumping over a fence. He was later apprehended and arrested.

Appellant complains that the trial court erred in denying his motion for mistrial "after a lay witness without qualification testified to whether a substance was cocaine." To the extent appellant is complaining about the crack pipe testimony, the jury was specifically instructed to disregard that testimony, and nothing in the record indicates the jury was unable to follow the

–5–

trial court's instruction.  Generally, an instruction to disregard cures any prejudicial effect of inadmissible testimony.  *See Hawkins v. State*, 135 S.W.3d 72, 84–85 (Tex. Crim. App. 2004).  Thus, he cannot show any harm caused by the denial of his motion for mistrial based on the crack pipe testimony.

As for the testimony about a rock of crack cocaine, we question whether appellant preserved this matter for review.  The prosecution agreed that the officer did not have the expertise to determine the nature of the rock, and the trial court sustained appellant's objection.  But when the trial court instructed the jurors that they were to disregard the testimony pertaining only to the crack pipe, the State alone argued to the court that the sustained objection related to the crack itself and not the pipe.  Appellant never entered into the discussion of what the instruction to disregard should reference, and he never objected to the instruction given by the trial judge.  Nor did he specify the basis of his motion for mistrial.  Thus, by not making the trial court aware of his particular objection to limiting the instruction to disregard to the crack pipe only, he has failed to preserve this complaint for appeal.  *See* Tex. R. App. P. 33.1.

Moreover, we cannot see how appellant was harmed by the testimony.  In light of the fact that Delahoussaye testified later that he saw appellant with a "white substance" and that appellant assaulted him while attempting to flee, we cannot conclude that the trial court's failure to instruct the jury to disregard the evidence that Delahoussaye called the rock "crack" affected appellant's substantial rights.  Surely, if the jury believed the testimony of Delahoussaye, the testimony that appellant assaulted a uniformed police officer made a greater impression than that he was seen with a rock of cocaine.  *See* Tex. R. App. P. 44.2(b).  We resolve appellant's third issue against him.

In his fourth issue, appellant complains that he was not permitted to testify about the underlying details of his prior murder conviction at the punishment hearing.  Outside the

presence of the jury, appellant testified that the murder case in which he pleaded guilty "was a self-defense case." Appellant continued,

> The guy came back, he had drawn a revolver on me and we—me and the guy that was talking, he walked off. And when he walked off he was talking to another guy that . . . was his uncle. And when he turned around, he was cocking the gun and he pointed the gun straight at me and then we just started shooting at each other so it was self-defense.

The trial court sustained the State's objection to the testimony and instructed the defense that they were not to go into the matter during appellant's testimony before the jury. The trial judge also instructed the jury to disregard appellant's comment before the jury that the murder case was a "self-defense case."

Appellant complains that the evidence was admissible under code of criminal procedure article 37.07 and to promote the objectives of punishment and rehabilitation under penal code section 1.02. Article 37.07, section 3(a) has been described as permitting both the State and the defense to describe the details of prior offenses. *See Hambrick v. State*, 11 S.W.3d 241, 243 (Tex. App.—Texarkana 1999, no pet.). Even if the trial court erred in excluding the testimony, however, appellant was not harmed.

Appellant was convicted of aggravated robbery. Other evidence adduced at guilt-innocence and punishment showed he had committed two other aggravated robberies within days of the instant offense. Although the complainant in each of the aggravated robberies claimed appellant had used a gun in the offense, appellant denied using a gun to commit two of the aggravated robberies and claimed he had not robbed the third complainant at all. In addition, testimony at the punishment hearing showed that—in addition to pleading guilty to and being convicted of murder—appellant had been convicted of robbery and two different evading arrest offenses. Attempting to explain his interaction with Delahoussaye, appellant said that the officer

was mistaken in his belief that appellant was holding drugs and denied that he ever punched the officer.

Appellant's explanation for his criminal history was that he had just "got on the wrong side of the law" and "made some mistakes in life." During jury argument on punishment, the defense conceded, "You know, [appellant] has a past and [you] have heard about it, and as far as the paragraph, you should find it true because he was . . . in TDC and that would be appropriate." The enhancement paragraph defense counsel was referencing was the murder offense for which he wanted to offer his self-defense testimony.

It is clear from appellant's ninety-nine year sentence that the jury did not believe appellant's claims regarding his prior offenses. Accordingly, any claim by appellant that he had committed the murder offense in self-defense but nevertheless pleaded guilty to the charge could not have affected his substantial rights. *See* TEX. R. APP. P. 44.2(b). We resolve appellant's fourth issue against him.

Appellant complains in his fifth issue that the trial court erred when it permitted the prosecutor to cross-examine him about the credibility of other witnesses. He specifically complains of questions by the prosecutor asking appellant if he believed the complainant had lied and asking appellant how many lies "have we got so far" when appellant denied committing various acts of misconduct while in prison. Appellant alleges there were "two distinct instances" of this type of questioning at trial.

As to the complainant, the following exchange took place between appellant and the prosecutor:

> Q. Before we go too much further let me give you the opportunity. You're telling this jury that you didn't have anything in your hand and that woman got on that stand and absolutely bald faced lied to them?
>
> A. I did not have a weapon in my hand.

[defense counsel]: Judge, I'm going to object to comparing testimony.

THE COURT: Overruled.

Q. (By [the prosecutor]) That lady lied to this jury from what you're telling them, right?

A. Right, I didn't have a weapon.

Q. She lied?

A. I didn't have a weapon, she was scared.

[defense counsel]: Judge, I object. They can pose a question to [appellant] but it's improper to ask whether a witness lied or not.

THE COURT: Overruled.

Because appellant did not object to this testimony in a timely fashion, he has waived his complaint pertaining to it. *See* TEX. R. APP. P. 33.1.

Appellant next complains that the trial court erred in overruling his objection to the prosecutor's question of him, "How many lies have we got so far do you think?" The question occurred in the context of the prosecution's cross-examination of appellant regarding offenses he may have committed when he was imprisoned. The questioning, in relevant part, follows.

Q. [prosecutor] Would you remember threatening a police officer or a detention officer?

A. In the penitentiary they can easily say you threatened someone and they just write you up. I ain't threaten [sic] no one, sir.

Q. So they lied?

A. I didn't threaten no one. You—

[defense counsel]: Assuming facts not in evidence, he denied it.

THE COURT: Overruled.

Q. [prosecutor] So if Officer Bailey had written up a report on that of you [sic] that would be a lie, correct?

A. They can easily say that you done [sic] something and you done it. That's the way it work in TDC. . . .

–9–

Q. Sir, are you saying you didn't?

A. I didn't. That's what I said, yes, sir.

Q. So if they said that, they would be lying; right?

A. They would be lying.

. . .

Q. On March 1st . . . 1995, did you expose yourself to Officer Benson?

. . .

A. Did —no, sir, I didn't expose myself, I was getting dressed in my cell.

Q. That would be a lie. . . .

. . .

Q. On November 18, 1996, did you assault and take a wristwatch of a member of the TDCJ staff?

A. No.

Q. So that would be a lie, correct? That would be a lie, correct?

A. That's right, I ain't—

Q. How many lies have we got so far do you think?

A. In TDC you can easily say a inmate [sic] done something, it's done [sic].

[defense counsel]: Judge, I'm going to object there is no evidence. He's been asked allegations and he has responded. To compare an allegation to make him make the statement that it is a lie is inappropriate. I object on that basis.

THE COURT: I overruled.

The cross-examination of appellant continued in this way. The prosecutor also questioned appellant about his extraneous offenses.

Q. And this jury has already heard about [sic] from Officer Delahoussaye. He had to deal with you in 2009, correct?

A. That was evading arrest. That was evading arrest, yes.

–10–

Q.  The one they heard from, right?

A.  Yes.

Q.  But he lied, correct?

A.  I didn't hit him though.

Q.  Sir, that would be a lie—

A.  That's a lie, I did not hit Officer Bailey sir.

Q.  How many lies are we on now?

A.  How many lies are we on?

Q.  Have you been keeping count at all?

[defense counsel]:  Judge, objection to relevance.

THE COURT:  Overruled. . . .

The prosecutor continued to explore this line of questioning when cross-examining appellant about the other robberies the State alleged appellant had committed.

Q.  And you're telling this jury that your interaction with [Padilla] was he wanted you to go buy drugs?

A.  That what that was all about.

Q.  So he lied.

A.  If he was being robbed, why wouldn't he tell the police when we was in the Wal-Mart? . . .

Q.  Do you not hear the question?  Let me ask  you it again then?  You're saying he's lying.

A.  He is lying.

. . .

Q.  And Mr. Gutierrez, that's all just a big lie 'cause you've never been around him before.

A.  I don't know him.  Do you got a video showing that I know him.

. . .

Q.  [prosecutor]  So he lied, correct?

A. Correct.

Q. How many lies we on now?

A. You know, I don't know.

Appellant argues that the trial court committed reversible error when, over his objections, it permitted the State to force him to attest to the truth or falsity of another witness during "two distinct instances at trial." It is obvious from the record that there were far more than two instances of this line of questioning at trial, and appellant objected to almost none of them. To the extent appellant is arguing that the State was permitted to question him about the veracity of witness testimony, he cannot show how he was harmed by any error in permitting the questioning. Because the State questioned appellant on this basis on multiple occasions without a defense objection and appellant offered testimony about whether his accusers were lying, any error included in the two instances in the record where appellant did make an objection was rendered harmless by the additional questions and answers. *See Dreyer v. State*, 309 S.W.3d 751, 754 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Moreover, the nature of appellant's denials of the State's witnesses' claims was such that the only implication from his challenges to their claims could be that the State's witnesses were lying, even if appellant had not specifically uttered the words. His assertion that the witnesses were lying did not contribute in any meaningful way to his claims that the State's witnesses did not accurately describe the extraneous offenses, so any error in the two occasions where his objections were overruled was harmless. We resolve appellant's fifth issue against him.

In his final issue, appellant complains that the prosecutor argued facts not in evidence when she mentioned his prison time during her closing argument. The prosecutor stated, "You also heard some of the things that happened while he was in prison. From there he was released—" Defense counsel's objection that "[t]here were questions asked that were denied"

–12–

was not ruled upon, and the trial judge stated, "The jury will recall the testimony."  Appellant did not object to the trial judge's comments and instead thanked the judge when he instructed the jurors to recall the testimony.  By failing to obtain an adverse ruling on the record or object to the trial court's refusal to rule on his objection, appellant has waived his complaint for appeal.  *See* TEX. R. APP. P. 33.1; *Thierry v. State*, 288 S.W.3d 80, 85 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).  We resolve appellant's sixth issue against him.

We affirm the trial court's judgment.


/Martin Richter/
MARTIN RICHTER
JUSTICE, ASSIGNED

Do Not Publish
TEX. R. APP. P. 47

120021F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTHONY GLENN DAVIS, Appellant

No. 05-12-00021-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F10-61184-R.
Opinion delivered by Justice Richter.
Justices FitzGerald and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 26th day of June, 2013.


/Martin Richter/
MARTIN RICHTER
JUSTICE, ASSIGNED

–14–