

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00290-CR

CHARLIE FRELIX III, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1491849D, Honorable David C. Hagerman, Presiding

September 13, 2019

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Following a jury trial, appellant Charlie Frelix III was convicted of the second-degree felony offense of sexual assault of a child under seventeen years of age[1] and sentenced to a term of imprisonment of fifteen years.[2] Appellant challenges his conviction through two issues. We will affirm.

---

[1] TEX. PENAL CODE ANN. § 22.011(a)(2) (West 2011).

[2] TEX. PENAL CODE ANN. § 12.33 (West 2011). This is a second-degree felony punishable by imprisonment for any term of not less than two years or more than twenty years and a fine not to exceed $10,000.

## Background

Appellant was charged via a four-count indictment with one count of continuous sexual assault of a child under the age of fourteen and three counts of aggravated sexual assault of a child under the age of fourteen. After hearing the evidence, the jury found appellant not guilty of the four charged offenses, but guilty of a lesser-included offense to one count, sexual assault of a child under the age of seventeen.

The complainant, D.W., lived with her father in an apartment complex in Fort Worth. The father testified they lived in those apartments for "about a year and a half" when D.W. was "13, 14 years old . . . ." When she was thirteen, appellant, a man in his twenties, began visiting the family's apartment. At some point, the father testified, he noticed D.W. was frequently away from the apartment. He would see her enter a friend's nearby apartment and would observe appellant going in and out of the apartment "all the time."

D.W. testified that at a point during the events, her relationship with appellant became sexual. During her testimony, she acknowledged that appellant put his penis in her vagina, that appellant's mouth went on her vagina, and appellant's penis went into her mouth. She told the jury these acts took place in her friend's apartment, at appellant's home, and "probably" in appellant's car. Later in her testimony, D.W. admitted that she has "a history of making up things and lying."

D.W. also testified that around the time she had a relationship with appellant, she and a female friend decided to become prostitutes to make money. She said she was "picked up" by police a couple of times for prostitution and was later arrested for the offense. During a discussion with an officer about her involvement in prostitution, D.W.

told about her relationship with appellant. As a result of that conversation, D.W. went to Cook Children's Hospital for a sexual assault examination.

D.W. also was interviewed by a Homeland Security agent working with Fort Worth police on human trafficking cases. Based on information he received from D.W., the agent identified Facebook accounts he believed belonged to D.W. and to appellant. He obtained a search warrant for records from Facebook and received from the company a volume of pages for each account. The State offered into evidence pages containing iMessages identified as exchanged between appellant and D.W. During cross-examination, the agent acknowledged his lack of personal knowledge regarding the records and acknowledged he relied on Facebook to deliver the proper records. D.W. testified outside the presence of the jury to conversations she had with appellant through Facebook and agreed the proffered records contained messages they exchanged. Appellant objected the documents were not properly authenticated. The court overruled the objection, the documents were admitted into evidence, and the State read parts of the exhibit to the jury.

Appellant now appeals his conviction, arguing the evidence at trial was insufficient to support his conviction for sexual assault of a child under the age of seventeen and arguing the trial court erred by admitting the Facebook records into evidence.

Analysis

Issue One - Sufficiency of the Evidence

In considering whether the evidence is sufficient to support a conviction, we review all the evidence in the light most favorable to the verdict and assume that the trier of fact

3

resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Ryder v. State,* 514 S.W.3d 391, 396 (Tex. App.—Amarillo 2017, pet. ref'd) (citing *Jackson v. Virginia,* 443 U.S. 307, 318 (1979); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). For this purpose, we consider evidence that was improperly admitted before the jury, as well as that properly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Ryder*, 514 S.W.3d at 396. The jury is the sole judge of a witness's credibility, and the weight to be given the testimony. *Ryder,* 514 S.W.3d at 396 (citing *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)). We consider only whether the jury reached a rational decision. *Id.* (citing *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). The testimony of a child sexual abuse victim alone is sufficient to support a conviction for sexual assault of a child under the age of seventeen. TEX. CODE CRIM. PROC. ANN. art. 38.07(a).

To support the jury's finding appellant was guilty of the lesser-included offense of sexual assault of a child under the age of seventeen, under the indictment in this case, the State had to prove appellant intentionally or knowingly caused his sexual organ to contact the sexual organ of D.W., a child younger than seventeen years of age. TEX. PENAL CODE ANN. § 22.011(a)(2)(C), (c)(1). Knowledge of the victim's age is not an element of the offense. *See id.* (setting forth elements of offense).

D.W., sixteen at the time of trial, testified she and appellant were in a relationship and engaged in sexual behavior, including penetrating sex, when she was thirteen years old and appellant was in his twenties. D.W. also testified she engaged in other sexual acts with appellant, including penile-oral contact and vaginal-oral contact. She told the

4

jury these acts occurred frequently and in several locations. The jury could have seen some uncertainty in the testimony regarding D.W.'s age at the time their sexual relationship began. D.W.'s testimony alone is sufficient to support appellant's conviction for the lesser-included offense. TEX. CODE CRIM. PROC. ANN. art. 38.07(a). *See also Taylor v. State,* 555 S.W.3d 765, 774-75 (Tex. App.—Amarillo 2018, pet. ref'd) (finding the child victim's testimony was sufficient evidence of each of the essential elements of the offenses for which the defendant was convicted).

Appellant argues the only evidence supporting his conviction came from D.W., an admitted liar. He contends that because D.W. herself and other witnesses testified that she often lied and made up stories, her testimony should not have been believed and thus was not sufficient to support his conviction. Appellant's entire argument here is that D.W. was not credible. But it is for the jury to determine the credibility of witnesses. *Ryder,* 514 S.W.3d at 396 (citing *Isassi,* 330 S.W.3d at 638). *See also Taylor,* 555 S.W.3d at 774. As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex. Crim. App. 2002) (citation omitted). As noted, D.W.'s testimony supported each element of the offense of sexual assault of a child under the age of seventeen. The jury, as evidenced by its verdict finding guilt, believed D.W.'s testimony.

Further, as set forth above, in a sufficiency review, the reviewing court considers all admitted evidence, regardless whether it was properly or improperly admitted. *Winfrey v. State,* 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (citations omitted). Therefore, in addition to D.W.'s testimony, we also consider the Facebook iMessages that D.W. testified were messages she and appellant exchanged. Those messages included

5

discussion of the sexual relationship between D.W. and appellant when D.W. was under the age of seventeen. This evidence also supports appellant's conviction.

We find the evidence was sufficient to support appellant's conviction and resolve appellant's first issue against him.

Admission of Facebook Records

In his second issue, appellant contends the trial court abused its discretion in admitting into evidence the Facebook records from D.W.'s and appellant's accounts that contained conversations between the two. Appellant asserts the records were not properly authenticated.

A trial judge has wide discretion in the admission of evidence at trial. *Ryder*, 514 S.W.3d at 398 (citing *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007); *Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1991) (op. on reh'g)). We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Id.* (citing *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010)). Under an abuse of discretion standard, we do not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement. *Id.* (citation omitted). We will affirm the trial court's ruling if it was correct under any theory of law applicable to the case. *Id.* (citing *State v. Esparza*, 413 S.W.3d 81, 82 (Tex. Crim. App. 2013)).

Under Rule of Evidence 901(a), the proponent of proffered evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). In a jury trial, it is the "jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims; the trial court need only

make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (citing *Tienda v. State,* 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)). The trial court's determination whether the proponent has met this threshold requirement may be reviewed on appeal for an abuse of discretion and "should not be countermanded so long as it is within the zone of reasonable disagreement." *Id.*

Evidence may be authenticated in several ways, including through the testimony of a witness with knowledge, by distinctive characteristics and the like, by comparison with other authenticated evidence, or by circumstantial evidence. *Tienda,* 358 S.W.3d at 638; TEX. R. EVID. 901(b). Electronically stored evidence such as social media content presents some unique authentication issues because such evidence is susceptible to fabrication, hacking, and manipulation. *Id.* But, courts in many jurisdictions have admitted "[p]rintouts of emails, internet chat room dialogues, and cellular phone text messages . . . when found to be sufficiently linked to the purported author so as to justify submission for the jury for its ultimate determination of authenticity." *Tienda,* 358 S.W.3d at 639 (collecting cases).

Addressing the authentication of Facebook messages, the Third Court of Appeals cited two authentication concerns with respect to the identity of a message's purported author. *Campbell v. State,* 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.) (citing *Griffin v. State*, 419 Md. 343, 19 A.3d 415, 420-21 n.6 (Md. 2011)). The first concern recognizes that a person viewing a Facebook profile cannot know whether the profile is legitimate because "anyone can establish a fictitious profile under any name." *Id.* The

7

second concern is based on the risk that a person may obtain a user's name and password, gain access to the user's Facebook account and generate a message purporting to be authored by the user. Because of that risk, a "person viewing communications on or from an account profile cannot be certain that the author is in fact the profile owner." *Id.* For those reasons, the court noted, that such a communication on its face purports to originate from a particular person's account is generally insufficient standing alone to authenticate that person as the communication's author. *Id.* (citing *Tienda,* 358 S.W.3d at 642).

The search warrant issued in this case, addressed to Facebook, Inc., is in evidence. It identified the five accounts for which records were sought by name and account ID. Both of the accounts listed for appellant on the warrant show his name as "Charlie Frelix" and list a numeric account ID.

The list of messages printed on State's Exhibit 1 identifies each message by author, recipient, date and time sent, and the body of the message. On each message listed, appellant's name, whether shown as author or recipient, is accompanied by a numeric entry corresponding to the account ID for one of his accounts as listed in the search warrant.

From this information, it can fairly be said that State's Exhibit 1 contains communications that on their face purport to originate from appellant's Facebook account. The State's witnesses did not disclose how they identified the Facebook accounts the

Homeland Security agent believed belonged to D.W. and appellant.[3]  The evidence in the record thus leaves open the possibility that Facebook, Inc. produced records from an account not created by appellant, though standing in his name.  *Campbell,* 382 S.W.3d at 549.  And the possibility exists that State's Exhibit 1 accurately reproduces messages sent between D.W.'s and appellant's accounts, but by an author other than appellant.  *Id.* Though the exhibit on its face may not for those reasons provide enough information to authenticate the messages as those sent to D.W. by appellant, review of the messages themselves in light of testimony the court heard sufficiently fills the gap.

We note first that D.W.'s participation in the messaging is corroborated by a photograph attached to a message she is shown to have sent to appellant.  The photograph is of D.W.,[4] and shows most of her face. State's Exhibit 1 contains a message from D.W. to appellant, sent some twenty seconds after the photograph, reading, "lg that's cute."  Appellant is shown to have responded less than a minute later with a message reading, "yea it is but you shor you wont to be with me??????"

The court also could have considered the testimony of D.W.'s father, who testified to his observations of the relationship between appellant and his daughter.  As noted, he said during the time they lived in the apartments, he became concerned that D.W. and appellant frequently appeared to be in a nearby apartment at the same time.  He testified he and his wife later found the two together in appellant's car at the apartment complex

---

[3] Asked whether he could testify "about the authenticity of the records," the agent replied that "Facebook does give us certificate of authenticity."  No such certificate is in evidence and its contents were not further described.

[4] During cross examination after admission of the exhibit, D.W. confirmed she is the person shown in the photograph.  Even without her testimony, the trial court could have reached that conclusion from her appearance before the court.

where the family had moved and told appellant to stay away from D.W. D.W. flew into a rage and threatened to slash his tires. The father's wife called police. The evidence thus showed a relationship existing at that time between D.W., then about thirteen, and appellant, in his twenties, that her father considered inappropriately close.

State's Exhibit 1 contains messages reflecting a personal relationship between the messengers consistent with that D.W.'s father said he and his wife observed. The contents reflect also discussion of the messengers' sexual relationship.

D.W. testified she and appellant each had Facebook profiles, under their own names. She said the two communicated through Facebook Messenger. She described for the court the procedure used for Messenger communications on Facebook. She agreed they communicated frequently about their relationship, including conversations about sex. And in later testimony before the admission of State's Exhibit 1, D.W. agreed she knew her conversations on Facebook were with appellant, and that those conversations with him were contained in the exhibit. *See Norris v. State*, No. 06-16-00150-CR, 2017 Tex. App. LEXIS 3724, at *3-4 (Tex. App.—Texarkana Apr. 27, 2017, pet. ref'd) (mem. op., not designated for publication) (finding Facebook Messenger texts sufficiently authenticated).

Despite the evidence of D.W.'s later prostitution, the court heard no evidence she had a sexual relationship with any other person during the time period reflected in the messages. *See Butler*, 459 S.W.3d at 604 (noting record in that case failed to suggest any other likely author of disputed text messages). And, unlike some other Texas cases, this record contains no evidence reflecting appellant's denial he was the author of the messages attributed to him in State's Exhibit 1. *See Campbell*, 382 S.W.3d at 550

10

(purported author of Facebook message denied sending it); *Massimo v. State,* 144 S.W.3d 210, 216-17 (Tex. App.—Fort Worth 2004, no pet.) (defendant asserted emails sent on her behalf by an impersonator).

For those reasons, we find the trial court did not err in admitting the Facebook documents and overrule appellant's second issue.

## Conclusion

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

James T. Campbell<br>
Justice

Do not publish.