**Opinion filed April 16, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00091-CR

_____

### VICTOR ROLANDO CORPUS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 15867-D**

## M E M O R A N D U M   O P I N I O N

The jury convicted Victor Rolando Corpus of continuous sexual abuse of a child, a first-degree felony, and indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 21.02(b), (h), 21.11(a)(1), (d) (West 2026). The jury assessed Appellant's punishment at confinement for a term of forty-five years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) on the conviction for continuous sexual abuse of a child and at confinement

for a term of twenty years in TDCJ on the conviction for indecency with a child. The trial court ordered that the sentences be served concurrently. In a single issue, Appellant contends that the trial court abused its discretion when it denied his motion for a continuance. We affirm.

*Background Facts*

In a two-count indictment, Appellant was charged with continuous sexual abuse of a child committed against PSEUDLC and PSEUILLY and indecency with a child against PSEUDLC by breast touching.[1]

Three weeks before the jury trial began, the State informed Appellant's trial counsel that Appellant's cousin, who the State intended to call as a witness pursuant to Article 38.37 of the Texas Code of Criminal Procedure, had previously been admitted into a behavioral hospital. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2025) (relating to evidence of extraneous offenses in certain cases). Appellant's trial counsel issued a subpoena to Oceans Behavioral seeking the records related to the hospital stay, but then counsel learned that the hospital was owned by Acadia at the time of the cousin's admission and the facility had been subsequently acquired by Oceans Behavioral. The records of patients treated at the time of the cousin's admission were transferred to Acadia in Belton. Upon discovering this, Appellant's trial counsel reissued the subpoena to Acadia. It was served on March 13, 2024, with the records to be hand-delivered at the courtroom on the first day of trial or e-mailed to Appellant's trial counsel if available sooner.

The jury trial began on March 18, 2024. Prior to the commencement of jury selection, Appellant's trial counsel informed the trial court that the records she had subpoenaed had not yet been delivered, and she explained the challenges that she encountered when issuing the subpoena. Appellant's trial counsel stated that she

---

[1]We use pseudonyms to refer to the victims to protect their identities.

would follow up on the records, and the trial court advised that it would follow up as well if necessary. The trial proceeded, and the jury was empaneled and sworn. Appellant pleaded "not guilty" to both counts.

Appellant's cousin first testified at an Article 38.37 hearing, outside of the presence of the jury. CRIM. PROC. art. 38.37, § 2-a. She testified at the hearing that she did not tell anyone at Acadia about the offenses that Appellant committed against her. In this regard, after pressure from her family, she had agreed to drop the charges against Appellant for $10,000. As a result of the payment arrangement, made when she was thirteen, Appellant's cousin was prohibited by its terms and by her family members from speaking about what Appellant had done. She testified that, because of the agreement, she "wasn't allowed to tell [Acadia]" about the offenses. After the hearing, the trial court found that Appellant's cousin's testimony could be admitted at trial under Article 38.37. *Id.*

The trial continued the next day. The Acadia records still had not been delivered despite the subpoena. The trial court called the chief financial officer of the facility and spoke with her. The trial court stated that the chief financial officer explained that the records still had not been found and that the facility was having difficulty in locating them. The trial court asked Appellant's trial counsel what she wanted the court to do and if she had any concerns. Appellant's trial counsel responded:

> I was in the room when you made the phone call. [The chief financial officer] did express confidence that the records existed, that it wasn't a situation that the records might no longer be available. It was a situation of record numbers getting mislabeled or rearranged somehow. So, they were having to have extra efforts in order to locate them.
>
> We questioned [Appellant's cousin] yesterday, [the State] did, about what we might find in those records because I subpoenaed them because when you find out that an alleged complaining witness has sought psychiatric treatment, you know, it's part of my independent

investigation to seek out those records; but without any knowledge that there might actually be anything mitigating for my client, it was in the course of a general investigation. [Appellant's cousin] testified yesterday that she did not speak about the alleged incident with [Appellant] at all at that time because . . . she was not allowed to do so by her family. At that point in time, she had essentially been sworn to secrecy by agreeing to take the money.

So, with that understanding of what might be in the records -- and I don't have any independent reason to believe that there would be anything other than that in the records; however, we do not know. It's an open-ended question at this point. I understand that you will continue to make those efforts to get some sort of update. If we come to the end of the State's case without any sort of update on the records, then at that point in time I might ask for a continuance in order to finish the process of getting those records. Knowing what we suspect might be in the records or might not be in the records, I understand that your ruling will consider efficiency of court time.

The trial court responded that it would consider the motion for continuance if and when it was made.

The trial proceeded. The jury heard testimony from the victims' mother, the forensic interviewer who interviewed the victims, the nurses who completed the victims' forensic exams, the victims themselves, a detective with the Abilene Police Department Special Victims Unit, Appellant's cousin, and law enforcement officers who were involved with the investigation when Appellant's cousin came forward.

After Appellant's cousin's direct examination by the State, Appellant's trial counsel made an oral motion for continuance before cross-examining the witness, because the Acadia records still had not arrived. Appellant's trial counsel discussed the efforts that had been made to obtain the records and acknowledged the difficulty in obtaining the records. Appellant's trial counsel stated:

[Appellant's cousin] testified previously in the [Article] 38.37 hearing that she did not speak about the incident at all in her treatment, as she had already basically been sworn to secrecy by her family at that point in time. So, what is in those records right now is a completely unknown

4

quantity; and we do have reason to believe that there wouldn't be information about the alleged offense in those records. That having been said, we don't know; therefore, we would ask for a continuance before we cross-examine [Appellant's cousin].

The trial court acknowledged the efforts that had been made and the difficulty in obtaining the records. The trial court expressed concern about granting the continuance, noting that it could still be "many, many days" before the records were located. Before ruling on the motion, however, the trial court made another phone call in an attempt to locate the records. The trial court was only able to leave a message. The trial court explained that "at this point we cannot just continue a trial unless there's something more than hope that there's some evidence out there that would be of some assistance to the defense." The trial court denied the oral motion for continuance, and the trial proceeded to a verdict.

*Analysis*

In a single issue, Appellant contends that the trial court abused its discretion by denying Appellant's motion for a continuance.

We review a trial court's ruling on a motion for continuance under an abuse-of-discretion standard. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Janecka v. State*, 937 S.W.2d 456, 458 (Tex. Crim. App. 1996). To establish an abuse of discretion, an appellant must show that the trial court erred by denying his motion for continuance and that he was harmed by the denial. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010); *Janecka*, 937 S.W.2d at 468.

The State asserts that Appellant waived his complaint regarding the trial court's denial of his motion for continuance because the motion was unwritten and unsworn. The State is correct in making this contention. To preserve appellate review from a trial court's denial of a motion for continuance, the motion must be in writing and sworn. CRIM. PROC. arts. 29.03, 29.08 (West 2006); *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). "Thus, if a party makes an unsworn

oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *Anderson*, 301 S.W.3d at 279. There is no due process exception to this requirement. *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012). Appellant's motion for continuance was an unsworn, oral motion. Accordingly, the trial court's denial of the motion was not preserved for review.

Even if Appellant had not waived his complaint, Appellant cannot show that the trial court erred in denying the motion. *See Gonzales*, 304 S.W.3d at 843.

Appellant urges us to apply the "*Taylor* factors" in determining whether the trial court abused its discretion in denying the motion for continuance. *See Taylor v. State*, 555 S.W.3d 765, 775 (Tex. App.—Amarillo 2018, pet. ref'd). The defendant in *Taylor* asserted that a denial of a motion for continuance interfered with his right to have counsel of his choice. *See id.* at 771, 775. Citing *Ex parte Windham*, 634 S.W.2d 718, 719–20 (Tex. Crim. App. 1982), the Seventh Court of Appeals identified several factors to weigh a defendant's right to obtain counsel of his own choice with a trial court's need for prompt and efficient administration of justice. *Id.* at 775. Because Appellant's right to counsel was not implicated by his motion for continuance, we find the *Taylor* factors inapplicable to this appeal.

Article 29.13 of the Texas Code of Criminal Procedure provides as follows:

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

CRIM. PROC. art. 29.13. Appellant has failed to show that the missing records were an "unexpected occurrence" that could not have been anticipated by reasonable diligence, or that he was "so taken by surprise" a fair trial could not be had. *See id.*

6

Appellant's trial counsel was aware on the eve of trial that the records had not been delivered. When an appellant is aware of problems securing evidence before trial, that appellant cannot show he was "so taken by surprise" that he could not have had a fair trial. *See Perez v. State*, No. 11-11-00247-CR, 2013 WL 5512834, at *10 (Tex. App.—Eastland Sept. 30, 2013, pet. ref'd) (mem. op., not designated for publication) (quoting CRIM. PROC. art. 29.13.).

Additionally, where it is not shown that evidence can be secured by postponement, or where it appears that a continuance due to missing evidence would delay the trial indefinitely, the motion may be properly denied. *Varela v. State*, 561 S.W.2d 186, 191 (Tex. Crim. App. 1978), *superseded by rule on other grounds as stated in Bodin v. State*, 807 S.W.2d 313, 317 (Tex. Crim. App. 1991). Because of the challenges in locating the records, neither the trial court nor Appellant's trial counsel could estimate how long it might take to obtain the records. The trial court was not required to postpone the trial indefinitely. *See id.* We note in this regard that the appellate record does not indicate that the medical records were ever located. As such, the trial court did not err by denying the oral motion for continuance.[2]

Finally, the appellate record does not show that Appellant was harmed by the denial of the motion for continuance. *See Gonzales*, 304 S.W.3d at 843. As we have previously noted, there is no indication in the record that the hospital records were ever found or that they contained entries that would have benefited Appellant at trial. Appellant contends that the records were important to Appellant's defense, regardless of what they contained. Because the content in the records remains unknown, however, their importance and their impact on Appellant's defense

---

[2]It is significant to note the trial court's efforts to assist Appellant's counsel in obtaining the medical records that Appellant sought. The appellate record demonstrates that the trial court made multiple phone calls in an effort to secure the records for Appellant. We are hard-pressed to find error on the part of the trial court in dealing with Appellant's motion for continuance when we consider the efforts made by the trial court to assist Appellant in obtaining the records.

remains speculation.  "[M]ere speculation about evidence that a defendant might have developed if the continuance were granted is not sufficient to demonstrate harm."  *Guerrero v. State*, 528 S.W.3d 796, 800 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (first citing *Renteria v. State*, 206 S.W.3d 689, 702 (Tex. Crim. App. 2006); and then citing *Nwosoucha v. State*, 325 S.W.3d 816, 825 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)).  Without further proof of the contents of the records, the record does not show harm or prejudice resulting from the trial court's denial of the motion for continuance.[3]

Appellant has not shown that the trial court erred in denying the motion for continuance or that he was harmed by the trial court's denial of the continuance.  *See* CRIM. PROC. art. 29.13; *Gonzales*, 304 S.W.3d at 843.  Accordingly, we overrule Appellant's sole issue.

## This Court's Ruling

We affirm the judgments of the trial court.

JOHN M. BAILEY

April 16, 2026

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[3]We note that, ordinarily, a defendant can make such a showing only at a hearing on a motion for new trial because only then will he be able to produce evidence regarding what additional information would have been available to him if the trial court had granted the motion.  *See Gonzales*, 304 S.W.3d at 842–43; *Nwosoucha*, 325 S.W.3d at 825.  Here, Appellant did not file either a motion for new trial or other posttrial motion in that regard.